IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHARLES G. COOPER, #857966 | § | |
| VS. | § | CIVIL ACTION NO. 6:06cv189 |
| FREDRICK EDWARDS, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Charles G. Cooper, an inmate previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis,* filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Sgt. Fredrick Edwards, Officer William Sexton, Sgt. Mark Dearing and Nurse Charlotte A. Bussey. The complaint was referred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on April 10, 2006. The Plaintiff complained about a use of force incident and the confiscation of his medical boots. On July 5, 2006, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. A *Spears* hearing is a proceeding which allows a litigant to offer sworn testimony in support of his allegations. The Fifth Circuit has stated that a *Spears* hearing is appropriate "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. It serves to implement the congressional intent of meaningful access to court for indigent litigants, and also to allow the district court to winnow out the wheat from the

unusual amount of chaff necessarily presented in a system which fosters *pro se* litigation. *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (*citing Watson v. Ault*, 525 F.2d 886, 890 (5th Cir. 1975). The Plaintiff was given written notice that the hearing was being conducted to determine if he should be allowed to proceed on his claims or whether the complaint should be dismissed as frivolous.

Regional Grievance Coordinator Chip Satterwhite, Assistant Warden Kevin Moore and Nurse Barbara Hughes were in attendance at the hearing in order to answer any questions the Court had concerning the Plaintiff's prison or medical records. Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the plaintiff. *Vernado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

The Plaintiff testified that he was the victim of excessive use of force on June 2, 2005. The incident began when Sgt. Edwards removed him from a recreation yard and talked to him about recreation yard procedures. The Plaintiff testified that Sgt. Edwards became aggressive with him. Sgt. Edwards placed a towel over the Plaintiff's nose and mouth twice, which made it impossible for the Plaintiff to breathe. Defendants Edwards and Sexton then started escorting him back to his housing area. On the way, Officer Sexton slapped the Plaintiff in the face. The Plaintiff was forcibly placed on the floor. Sgt. Dearing twisted his left arm and struck him in the face and back. The Plaintiff testified that his back was injured. He was transported to the infirmary. He received Ibuprofen 800 mg. for his back pain. He testified that he still has back problems.

The Plaintiff received a disciplinary case for exposing Officer Sexton to bodily fluids by spitting on his shirt. A disciplinary hearing was conducted on June 9, 2005. The Plaintiff testified

that his punishment consisted of loss of commissary privileges for 45 days, cell restrictions for 45 days, remain at Line Class 3 and solitary confinement for 15 days. He noted that the case was not overturned. He also noted he is not eligible for mandatory supervision since he has a life sentence.

The Plaintiff also complained that Nurse Bussey took his medical boots on October 3, 2005. She told him that he could not have them due to his security status in administrative segregation, which was level 3. She also told him that he could get them back if he was returned to level 1. The Plaintiff testified that he received the boots in 2002 for ankle support. He had property papers for the boots. Nurse Bussey, however, never returned the boots. He never received confiscation papers for the boots. It was noted that the response to his Step 1 grievance indicated that the boots were returned on October 4, 2005. The Plaintiff testified, however, that the boots were never returned. The response to the Step 1 grievance also noted that he did not have a medical pass for medical boots. The response to his Step 2 grievance noted that medical personnel found in 2003 that he did not need medical boots. On November 21, 2005, medical personnel reviewed his situation and again found that he did not have a need for medical boots. The Plaintiff testified that he needs the boots because his ankle swells without them.

Nurse Hughes testified under oath from the Plaintiff's medical records. With respect to the use of force incident, she testified that the Plaintiff complained about injuries to his face and back. The attending nurse did not observe any injuries. With respect to medical boots, Nurse Hughes testified that the policies concerning the issuance of medical boots have changed. Medical boots are rarely ever issued and are limited to situations where a foot is deformed or one leg is shorter than the other. She testified that the medical records state that the boots were returned two days after they were confiscated.

Warden Moore testified under oath that the boots would not have been confiscated for security reasons. The Plaintiff would have been allowed to keep them in administrative segregation.

The Plaintiff gave the Court permission to review the prison records submitted at the hearing. A use of force nursing note, dated June 2, 2005, specified that the Plaintiff claimed he had injuries to his face, back and ankles. The attending nurse specified that no injuries were noted and that there were no adverse health effects from the use of force. The entry was signed by Nurse Havis. The records include numerous sick call requests for medication after the use of force incident. The travel card submitted with the records confirm that he has a life sentence. The disciplinary records and grievance records are consistent with the Plaintiff's testimony. It is also noted that the Plaintiff attached the grievance records to the original complaint.

The Plaintiff's first claim was that he was subjected to excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must show that there was an "unnecessary and wanton infliction of pain." *Id.* at 5.

In the present case, the Plaintiff has alleged facts supporting a claim that Sgt. Edwards, Officer Sexton and Sgt. Dearing unnecessarily and wantonly used force against him. They should respond to his claims.

The Plaintiff also complained about the disciplinary case. The Supreme Court has historically held that the due process clause is applicable to disciplinary proceedings where a prisoner is threatened with a loss of good time or the imposition of solitary confinement. *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Court held that inmates must be afforded written notice of the claimed violation at least twenty-hours before a disciplinary hearing, a written statement of the fact finders as to the evidence relied on and reasons, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.

The Supreme Court subsequently placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court concluded that the federal judiciary had gone too far in extending due process rights as first articulated in *Wolff v. McDonnell*. The Court retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement. *Id.* at 485. The Court referred to its discussion in *Wolff* regarding solitary confinement as "dicta." *Id.* The Supreme Court went on to hold that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. The Court concluded that Conner did not have a "protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not

enough to trigger the protection of the Constitution. *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000). The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison v. Parker*, 104 F.3d at 769.

In the present case, the Plaintiff is not entitled to mandatory supervision since he has a life sentence. *See Arnold v. Cockrell*, 306 F.3d 277 (5th Cir. 2002). Even if he was eligible for release on mandatory supervision, he would not be entitled to federal relief because he did not lose any good time. *Madison v. Parker*, 104 F.3d at 769. Finally, the Plaintiff is not entitled to relief because he may not bring a civil rights claim about the disciplinary case because he has not shown that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Plaintiff's civil rights claim about the disciplinary case fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The disciplinary claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's final claim concerned the confiscation of his medical boots. The claim may be analyzed along two theories of recovery. The first theory involves an argument that the Plaintiff has a protected property interest in the boots. However, a state actor's negligent or intentional deprivation of an inmate's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533

(1984) (intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system provides an adequate postdeprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Property claims should be dismissed as frivolous. *Id.*

The confiscation of the medical boots may also be viewed as a medical claim since the Plaintiff alleged he needs the boots for his ankle. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

7

> disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A disagreement with medical treatment or a diagnosis does not constitute deliberate indifference to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d at 1238.

In the present case, medical personnel concluded that the Plaintiff did not need medical boots. He may disagree with the conclusion, but his disagreement does not provide a basis for a potentially meritorious civil rights lawsuit. Furthermore, the facts as alleged and developed do not support an inference that Nurse Bussey was deliberately indifferent when she took the boots. The confiscation of medical boots claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the Plaintiff may proceed with his excessive use of force claim against Sgt. Fredrick Edwards, Officer William Sexton and Sgt. Mark Dearing. It is further

**ORDERED** that the Plaintiff's remaining claims are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

**So ORDERED and SIGNED this 21st day of July, 2006.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE