IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHARLES G. COOPER, #857966 | § | |
| VS. | § | CIVIL ACTION NO. 6:06cv189 |
| FREDERICK EDWARDS, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Charles G. Cooper, an inmate previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants remaining in the lawsuit are Sgt. Fredrick Edwards, Officer William Sexton and Sgt. Mark Dearing. The complaint was referred to the undersigned pursuant to 28 U.S.C. § 636(c). The present memorandum opinion concerns the motions for summary judgment filed by the parties.

Plaintiff's Allegations

The Plaintiff complained that the Defendants subjected him to excessive use of force. On July 5, 2006, the Court conducted an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified that he was the victim of excessive use of force on June 2, 2005. The incident began when Sgt. Edwards removed him from a recreation yard and talked to him about recreation yard procedures. The Plaintiff testified that Sgt. Edwards became aggressive with him. Sgt. Edwards placed a towel over the Plaintiff's nose and mouth twice, which made it impossible for the Plaintiff to breathe. Defendants Edwards

and Sexton then started escorting him back to his housing area. On the way, Officer Sexton slapped the Plaintiff in the face. The Plaintiff was forcibly placed on the floor. Sgt. Dearing twisted his left arm and struck him in the face and back. The Plaintiff testified that his back was injured. He was transported to the infirmary. He received Ibuprofen 800 mg. for his back pain. He testified that he still has back problems. The Plaintiff was permitted to proceed with his excessive use of force claim.

Plaintiff's Motion for Summary Judgment

The Plaintiff filed a document entitled motion for summary judgment on September 21, 2006. He did not submit any summary judgment evidence or discuss the facts of the case. Instead, his motion consists of a series of legal statements and principles with supporting citations. He finally argued that the Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments.

Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment on October 5, 2006. They argued that they are entitled to summary judgment based on qualified immunity in that the Plaintiff has not shown a violation of his constitutional rights and because their actions were objectively reasonable. They also argued that they are entitled to Eleventh Amendment immunity. In support of their motion, they presented competent summary judgment evidence in the form of the Plaintiff's medical records, relevant portions of a major use of force report, Texas Department of Criminal Justice Policy Directive regarding rules of conduct and disciplinary guidelines for employees, relevant portions of the Plaintiff's disciplinary records and an affidavit by Dr. Harold B. Clayton.

Dr. Clayton specified in his affidavit that he had reviewed the Plaintiff's medical records regarding the use of force incident on June 2, 2005. The Plaintiff was examined by Nurse Linda Havis after the use of force incident. The Plaintiff claimed injuries to the side of his face, back and ankles. A physical exam by Nurse Havis revealed no visible or objective signs of injury to the Plaintiff. It was noted that he had a smell of alcohol or acetone on his breath. There was no bruising of the skin on the face, trunk or extremities. He ambulated well and exhibited no abnormalities of the back or lower extremities. The nurse concluded that there were no adverse heath effects from the use of force.

The major use of force report contained a number of significant items. There are statements by numerous individuals, including the Defendants. Sgt. Edwards stated that he observed the Plaintiff in the recreation yard and not properly dressed. The Plaintiff was ordered to put on his shorts. A few minutes later, he observed the Plaintiff still in violation of prison policy, so he ordered the Plaintiff out of the recreation yard to be counseled. Sgt. Edwards specified that the Plaintiff became upset and loud while the consequences of his actions were explained to him. As a precaution, Sgt. Edwards ordered the Plaintiff to turn around and submit to hand restraints. The Plaintiff complied with the order. Hand restraints were applied. Sgt. Edwards stated that he attempted to calm and reason with the Plaintiff, but the Plaintiff failed to cooperate. The Plaintiff continued to be loud and belligerent. Sgt. Edwards stated that he then asked Officer Loy to call for additional staff. When the additional staff arrived, Sgt. Edwards told the Plaintiff that he was going to be escorted to his housing assignment due to abnormal behavior and not following policy. During the escort, Officer Sexton slapped the Plaintiff with an open hand. Officer Sexton was ordered to back off. Sgt. Edwards then placed the Plaintiff against the wall with no resistance. The Plaintiff

then became loud and aggressive. Sgt. Edwards sent for a supervisor, along with a video camera. Lt. Sartin arrived on the scene. Sgt. Edwards was relieved of his duty. The camera was operated by an officer. Lt. Sartin ordered the Plaintiff to calm down and stop resisting. The Plaintiff failed to comply with the order. Lt. Sartin ordered Officers Gonzales and Martin, along with Sgt. Dearing, to place the Plaintiff on the ground. The Plaintiff continued to struggle. Officer Anthony placed leg restraints on the Plaintiff. The Plaintiff was lifted to his feet and escorted to the infirmary for a use of force physical. Sgt. Edwards specified that he returned to his normal duties.

Officer Sexton also submitted a statement. He specified that he was called to the area to provide assistance. When he arrived, Sgt. Edwards had the Plaintiff in front of the desk trying to calm him down and explaining the consequences of his actions. Sgt. Edwards told him to place hand restraints on the Plaintiff. Officer Sexton specified that he complied with the order. Officer Sexton stated that they tried to escort the Plaintiff back to his housing area, and the Plaintiff started yelling again. He turned towards the Plaintiff. The Plaintiff spat on his left shoulder and shirt collar. Officer Sexton stated that he responded by slapping the Plaintiff on the left jaw. Sgt. Edwards told him to back off and go back to J Pod. Officer Sexton left the area. He subsequently was questioned by Sgt. Edwards about his actions. It is noted that the Plaintiff was disciplined for failure to obey orders and exposing Officer Sexton to bodily fluids by spitting on his shirt.

Sgt. Dearing also submitted a statement. He specified that he also responded to a call for help. Upon his arrival, he observed the Plaintiff sitting on the floor in hand restraints near the outside recreation exit door. The Plaintiff was being loud and belligerent. Lt. Sartin ordered the staff to place the Plaintiff on his stomach. The Plaintiff continued to be belligerent, which prompted Sgt. Dearing to assist placing the Plaintiff on the floor. He secured the Plaintiff's upper body against

the floor. Leg irons were applied by Officer Anthony. Sgt. Dearing stated that he left the area after the leg irons were applied and returned to his normal duties.

The Defendants argued that the Plaintiff has not shown that his constitutional rights were violated in that any injuries he received were *de minimis*. Furthermore, they are entitled to summary judgment upon review of the remaining excessive use of force factors as set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992). They also argued that their actions were objectively reasonable. They thus concluded that they are entitled to summary judgment based on qualified immunity. They also argued that the are entitled to Eleventh Amendment immunity to the extent that they have been sued in their official capacity for monetary damages.

The Plaintiff did not respond to the Defendants' motion for summary judgment.

## Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The Defendants initially argued that they are entitled to summary judgment based upon the defense of qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not

violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee). The evaluation of a qualified immunity claim involves a two-step inquiry. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir. 1994); *Colston v. Barhnart*, 130 F.3d 96, 99 (5th Cir. 1997). The first step is to determine whether the plaintiff has shown a violation of a clearly established constitutional right. *Id.* The second step requires the court to determine whether the defendant's conduct was objectively unreasonable under existing clearly established law. *Id.*

Issues concerning qualified immunity should be resolved at the earliest possible stage. When factual issues are still in dispute at the time of trial, a court may not be able to make a decision as to whether officers are entitled to qualified immunity until the factual issues are resolved by a jury. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993). In such cases, the jury will have to decide "the underlying historical facts in dispute that are material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of existing law and facts available to them." *Id.* at 435. *See also Presley v. City of Benbrook*, 4 F.3d 405, 409-10 (5th Cir.

1993). The Fifth Circuit has also held that "while qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

The first step in the qualified immunity analysis concerns whether the Plaintiff has shown a violation of a clearly established constitutional right. The Plaintiff alleged that he was the victim of excessive use of force. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a

prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

On remand in *Hudson*, the Fifth Circuit concluded that the following factors are relevant in the inquiry whether there was an excessive use of force: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). *See also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). On the other hand, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). Even though there must be more than a *de minimis* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d at 924.

The Fifth Circuit has issued a number of decisions which provide guidance in determining whether an inmate's physical injuries were *de minimis*. In *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997), the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting the inmate's ear was *de minimis* and insufficient to provide a basis for a meritorious civil rights lawsuit. In *Gomez v. Chandler*, 163 F.3d at 924-25, the Fifth Circuit held that injuries consisting of "cuts, scrapes, contusions to the face, head and body" that resulted from

9

an inmate being knocked down, punched and kicked and that required medical treatment were more than *de minimis*.

In the present case, the Plaintiff received a routine examination following a use of force incident. The examination revealed that the Plaintiff did not have any bruising on the skin of his face, trunk or extremities. The Plaintiff ambulated well and exhibited no abnormalities of the back or lower extremities. The nurse concluded that there were no adverse health effects from the use of force. The Defendants thus appropriately argued that the Plaintiff's injuries were *de minimis*. The Plaintiff did not offer any competent summary judgment evidence in response to the claim that his injuries were *de minimis*. It is noted that he did not suffer any injuries comparable to those discussed in *Siglar*, which the Fifth Circuit characterized as *de minimis*. The Defendants' argument that the Plaintiff's injuries were *de minimis* is meritorious.

The Defendants also correctly argued that the Plaintiff was not the victim of excessive use of force in light of the other *Hudson* factors. There was a need for application of force in response to the Plaintiff's behavior. The incident began with the Plaintiff violating the dress code on the recreation yard. When he was told to get dressed, he became loud and belligerent. Thus he was ordered to submit to handcuffs. The Plaintiff eventually became more belligerent and spat on the Officer Sexton. Force was used in response to the Plaintiff's behavior. His misconduct resulted in two disciplinary cases for failing to obey orders and exposing an officer to bodily fluids.

With respect to the need and amount of force used, the Defendants responded appropriately to the Plaintiff's actions. When the Plaintiff violated the dress code on the recreation yard, he was ordered to get dressed. The situation would have ended at that time if he had complied. The Plaintiff, however, persisted in violating the dress code. In response to orders to leave the recreation

yard, the Plaintiff became upset and loud while being counseled. The situation would have ended if he had simply complied with Sgt. Edwards' instructions. Sgt. Edwards thus attempted to resolve the matter by handcuffing the Plaintiff. The Plaintiff, however, continued to be loud and belligerent. Sgt. Edwards attempted to end the situation by having the Plaintiff placed in his cell, but the Plaintiff still did not cooperate. He then spat on Officer Sexton. Officer Sexton responded by slapping the Plaintiff. The Plaintiff was ultimately placed on the ground and leg irons were applied because he engaged in increasingly disruptive behavior that required a response. The Defendants justifiably felt threatened as the Plaintiff increased his threatening behavior, thus additional officers were called for and additional steps were taken to regain control over him. With respect to the final factor regarding efforts to temper the severity of a forceful response, the Defendants employed a number of steps to resolve the matter before any force was used. The Plaintiff could have stopped the escalation of the incident at any time by simply cooperating. He failed to do so. The Defendants' behavior was reasonable and appropriate in response to the Plaintiff's behavior.

      The Plaintiff failed to submit any competent summary judgment evidence to counter the Defendants' version of events. As such, the Plaintiff has not shown that there is a factual dispute warranting a trial. The competent summary judgment evidence supports the finding that the Plaintiff suffered at most a *de minimis* injury and that the Defendants' use of force was not of a sort repugnant to the conscience of mankind. Moreover, the competent summary judgment evidence supports a finding that the Plaintiff was not subjected to excessive use of force. He has not satisfied the first prong in the qualified immunity analysis requiring him to show a violation of a clearly established constitutional right.

The Plaintiff has also failed to submit competent summary judgment evidence showing that the Defendants' conduct was objectively unreasonable under clearly existing established law. He failed to satisfy the second prong in the qualified immunity analysis. Consequently, the Defendants are entitled to summary judgment based on qualified immunity.

The Defendants also correctly argued that they are entitled to summary judgment to the extent they are being sued for damages while acting in their official capacity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court held that neither a state nor a state official is a "person" for purposes of liability under 42 U.S.C. § 1983. On the other hand, a lawsuit may be "brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Department of Criminal Justice*, 160 F.3d 1052, 1053-54 (5th Cir. 1998). The Plaintiff is seeking an unspecific amount of damages against the Defendants. To the extent that the Plaintiff is suing the Defendants in their official capacity, he may not obtain compensatory and punitive damages. The Defendants' motion for summary judgment should be granted to the extent that the Plaintiff is suing them in their official capacity for compensatory and punitive damages.

In conclusion, the Defendants are entitled to have their motion for summary judgment granted and to have the case dismissed. It is accordingly

**ORDERED** that the Defendants' motion for summary judgment (docket entry #29) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is further

**ORDERED** that the Plaintiff's motion for summary judgment (docket entry #28) is **DENIED**.  It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 14th day of November, 2006.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE